**SO ORDERED.**

**SIGNED this 14 day of July, 2008.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| PAUL A. SHERIDAN<br>AMANDA LEE MCKEE-SHERIDAN | 08-00110-8-ATS |
| DEBTORS | |

### MEMORANDUM OPINION REGARDING TIMING OF DISCHARGE

A combined hearing to consider approval of the debtors' disclosure statement and confirmation of their chapter 11 plan of reorganization was held in Raleigh, North Carolina on July 8, 2008. The debtors' disclosure statement, which had been conditionally approved, contains adequate information and will be approved. Also, the debtors' plan of reorganization meets the confirmation requirements of 11 U.S.C. § 1129(a) and will be confirmed.

In this chapter 11 case the debtors are individuals, and the issue to be addressed in this memorandum opinion is the timing of the debtors' discharges. Should discharge be granted upon completion of all payments under the plan, or, should, as requested by the debtors, discharge become effective, as it would in a chapter 11 case involving a debtor that is not an individual, upon confirmation of the plan? The debtors have followed the court's procedures for requesting that their discharges take effect prior to completion of their plan payments and have shown cause why their request should be granted.

Paul A. Sheridan and Amanda Lee McKee-Sheridan filed a voluntary joint petition for relief under chapter 11 of the Bankruptcy Code on January 7, 2008. As is the custom in this district, an order was entered on January 9, 2008, directing the debtors to file a plan and disclosure statement within 90 days of the petition date. The debtors requested and were granted a 30-day extension, and their plan and disclosure statement were filed on May 6, 2008. The court conditionally approved the disclosure statement on May 7, 2008, and the combined hearing was held on July 8, 2008.[1]

Mr. Sheridan is an attorney in Raleigh, North Carolina who specializes in construction law. Mrs. Sheridan is a veterinarian, who is currently unemployed because she is staying at home to attend to the debtors' two-year-old child, who requires care for a serious medical condition. Mr. Sheridan left the practice of law in 2005 and moved to Arizona to become a real estate developer. His timing could not have been worse. The Arizona real estate market collapsed and so did his real estate development business. The debtors returned to North Carolina, and Mr. Sheridan has resumed his law practice. According to Schedule I, Mr. Sheridan's annual income is $100,000, which is somewhat less than he made as an attorney before leaving for Arizona.

The debtors' schedules reflect unsecured debts of more than $1,074,000, most of which are related to failed business ventures in Arizona and are listed as unliquidated, contingent or contested. The debtors' disclosure statement estimates that of the listed unsecured obligations, only $189,000, primarily consumer claims, are liquidated debts.

The debtors' other debts include administrative obligations for their attorney and accountant, an ad valorem tax debt of $3,412 owed to the Pima County, Arizona, unknown priority debt to the

---

[1] This is not a small business case as defined in § 101(51C), and the 45-day rule under § 1129(e) regarding confirmation of a plan in a small business case is not applicable.

2

Internal Revenue Service and the North Carolina Department of Revenue, a domestic support obligation owed by Mr. Sheridan for child support, a secured debt to Wells Fargo Home Mortgage secured by a deed of trust on their residence in Fuquay Varina, North Carolina, two secured debts to Countrywide Home Loans secured by deeds of trust on the debtors' former residence in Tucson, Arizona, and a secured debt to Vantage West Credit Union secured by a lien on their 2005 Ford F250 truck.

The debtors' assets include their residence in North Carolina, valued at $175,000 subject to a lien of $116,000 in favor of Wells Fargo, their former residence in Arizona valued at $400,000 subject to the two liens aggregating $548,000 in favor of Countrywide, their Ford truck valued at $6,600 subject to the lien in favor of Vantage West of $4,600, net equity of $3,000 in a Jeep owned by Mrs. Sheridan and her mother, an unencumbered inoperable 1971 MGB automobile valued at $4,000, IRA accounts totaling $77,000, personal property valued at no more than $3,000, and non-exempt business investments worth no more than $25,000.

The debtors were residents of two states within 730 days prior to bankruptcy, and under § 522(b)(3), Arizona law applies to the debtors' exemptions. Pursuant to those exemptions, the debtors claimed the equity in their North Carolina home, their IRA accounts, one of their automobiles, and personal household goods as exempt. After accounting for exemptions, assets available to creditors are worth approximately $30,000, and after deducting priority claims of $13,000, the amount available for unsecured creditors is only $17,000.

The debtors' plan includes 9 classes, only one of which, Class IX for general unsecured claims, is impaired. Administrative claims (Class I) will be paid in full at confirmation, taxes (Classes II, III and IV), to the extent there are any owing, will be paid in accordance with §

3

1129(a)(9)(C), Mr. Sheridan's domestic support obligation for child support (Class V) is current and will be paid each month, the Wells Fargo claim (Class VI) secured by the debtors' North Carolina residence is current and contractual payments will be maintained, the Countrywide claim (Class VII) secured by the debtors' former residence in Arizona will be satisfied by surrendering the residence for foreclosure (which, under Arizona's anti-deficiency statute, will eliminate any remaining unsecured claim), and the Vantage West claim (Class VIII) secured by the debtors' truck is current and contractual payments will be maintained.

The only impaired class, Class IX for general unsecured claims, will be paid a total of $20,000 with interest at the rate of 6% per annum over a period of 5 years in monthly installments commencing within 90 days of the effective date of the plan. The payments will be made pro rata to general unsecured claimants and will be secured by a second deed of trust on the debtors' North Carolina residence. An attorney will serve as the trustee under the deed of trust and may foreclose if payments are not made. The trustee will release the deed of trust when the obligation to the creditors in Class IX is paid in full.

As is typical in chapter 11 cases of this size, few creditors bothered to vote for or against the plan, but there were sufficient acceptances in Class IX to satisfy the requirements of § 1129(a)(7) and § 1129(a)(10). Although one small unsecured creditor did vote to reject the plan, no holder of an allowed unsecured claim objected to the debtors' plan, and, consequently, the disposable income requirement of § 1129(a)(15) is not applicable. The bankruptcy administrator filed a response to the plan, but she generally supported confirmation.

All of the confirmation requirements of § 1129(a) were met and the only remaining issue is the timing of the discharge. In chapter 11 cases that do not involve individuals, confirmation of the

plan, unless otherwise provided in the plan or the order confirming the plan, has the effect of a discharge and no separate discharge order is entered. 11 U.S.C. § 1141(d)(1). However, § 1141(d)(5)(A) provides that in a chapter 11 case in which the debtor is an individual:

> unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan.

Under § 1141(d)(5)(A), the general rule in chapter 11 cases involving individuals is that the discharge will not be entered until the debtor has made all plan payments.[2] But, the court may deviate from that general rule "after notice and a hearing" if the court finds "cause."[3] Essential to

---

[2] Delaying the discharge until all payments are made presents several practical problems. How will the court know when all payments have been made? Typically, there is no trustee in a chapter 11 case, so presumably it will be up to the debtor to notify the court that all plan payments have been made. In the Eastern District of North Carolina, notification of the completion of plan payments is accomplished by a notice and request for discharge that is sent to the court and served on all creditors and the bankruptcy administrator.

    A delayed discharge also raises questions regarding the timing of the closing of the case. If the debtor does not get a discharge until all payments are made, must the case remain open until the discharge is entered? If no notice of payment completion is filed, will the case remain open indefinitely? Must the clerk's office or the bankruptcy administrator's office monitor the case to see that the notice is filed? And, as long as the case remains open, must the debtor pay the chapter 11 quarterly fees required by 28 U.S.C. § 1930(a)(7)? See Robert J. Landry, *Individual Chapter 11 Cases After BAPCPA: Can You Still Close The Case Early?*, 25 Am. Bankr. Inst. J. 10 (July/August 2006).

    When a case should be closed is an issue that should be considered at the confirmation hearing. In most cases in the Eastern District of North Carolina, even though discharge will typically be entered when all payments are completed, the case will be closed upon substantial consummation under § 1101(2) when there has been a commencement of distribution under the plan. In the EDNC orders confirming plans for individuals provide that "upon the filing of a 'Notice of Completion of Plan Payments and Request for Entry of Discharge' accompanied by a certificate of service, the case will be automatically re-opened pursuant to § 350 without the payment of a fee." The notice, which the debtor serves on all creditors and the bankruptcy administrator, provides that if there is no response within 20 days, a discharge order may be entered.

[3] In addition, a discharge may be entered under § 1141(d)(5)(B), which provides for entry of discharge after confirmation but before all plan payments have been made. The debtor must show that unsecured creditors received more than they would have received under chapter 7 and that

5

the "notice and hearing" prerequisite is that creditors be given actual notice that a discharge prior to completion of all plan payments is being requested. The notice requirement was fulfilled in this case by a conspicuous notice in the disclosure statement, and by a statement in the notice of the confirmation hearing. The first page of the disclosure statement in bold and capital letters alerted creditors that the debtors were requesting that discharge be effective upon confirmation as follows:

> **THE DEBTORS HEREBY GIVE NOTICE THAT THEY INTEND TO SEEK THE ABOVE-REFERENCED RELIEF** [discharge upon confirmation of Plan on Effective Date] **AT THE HEARING ON CONFIRMATION OF THIS PLAN.**

Additionally, consistent with this court's procedure when an individual debtor requests that the chapter 11 discharge be effective before all plan payments are completed, the notice of the confirmation hearing sent to all creditors by the clerk's office contained the following language:

> As stated in the disclosure statement, the debtors' plan proposes that the discharge in this case shall become effective upon confirmation of the plan. Any objection to that proposal must be filed by the deadline for objections contained in this notice. Whether or not an objection is filed, the court may or may not grant the relief requested based on whether or not the debtor has set forth sufficient cause as required by 11 U.S.C. § 1141(d)(5)(A) in the disclosure statement.

Section 1141(d)(5)(B) gives no guidance or examples of what might constitute cause for granting a discharge prior to the completion of all plan payments, and that section, having been added to the Bankruptcy Code in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, is too new to have generated much

---

modification of the plan under § 1127 is "not practicable." 11 U.S.C. § 1141(d)(5)(B). This is similar to what is known as the "hardship discharge" under § 1328(b) in chapter 13 cases, except no hardship is required under § 1141(d)(5)(B). A discharge under § 1141(d)(5)(B) requires a motion to be filed by or behalf of the debtor.

discussion in reported cases.[4] The factors that are persuasive to the court in this case are the likelihood that the debtors will make all of their plan payments and the assurance, in the form of collateral, that creditors will receive the amount they have been promised even if the plan payments are not made. The debtors' plan has only one impaired class and that class is being given collateral to secure payment of the amount the class has been promised. Class IX is to receive $20,000 plus interest of 6% that will be secured by a second deed of trust on the debtor's North Carolina residence. The real property is valued at $175,000 and is subject to a first lien deed of trust of $116,000. Furthermore, Mr. Sheridan's income as a construction law attorney is sufficiently reliable that there is a strong probability that Class IX will be paid the $20,000 plus interest called for in the plan. If Class IX is not paid by regular monthly payments, the trustee can foreclose the collateral and there should be sufficient equity in that property to pay the amount that the plan provides. The combination of the likelihood of payment and the assurance that the unsecured creditors will receive what they have agreed to accept in satisfaction of their claims gives the court confidence to allow the discharge to take effect upon confirmation of the plan.

  A separate confirmation order will be entered providing that the debtors' discharges shall be effective upon the effective date of the plan's confirmation.[5]

  **SO ORDERED**.

**END OF DOCUMENT**

---

[4] See In re Ball, 2008 WL 2223865 at *4 (Bankr. N.D.W. Va. 2008) (cause does not include desire to avoid quarterly fees or post-confirmation reports).

[5] None of the exemptions claimed by the debtors require the court to consider the requirements of § 1141(d)(5)(C) in determining whether to grant discharges in this case. Also, because the debtors' plan does not provide for the liquidation of all or substantially all of the property of the estate, the debtors need not take the personal financial management course as a prerequisite to receiving a discharge. See Fed. R. Bankr. P. 1007(b)(7) (Interim).